## HOSIERY CO. v. COTTON MILLS.

(Filed March 6, 1906).

*Contracts—Sales—Measure of Damages—Date of Delivery Postponed—Harmless Error.*

1. In an action to recover damages for breach of contract in failing to deliver goods having a market value, the general rule for the measure of damages is the difference between the contract price and the market value "at the time when and place where they should have been delivered."

2. Where, by the terms of the contract, the goods are to be delivered by instalments or at stated periods, the time of delivery will be the date for the delivery of each instalment successively, the damage being the aggregate of these differences estimated as of these respective dates, and interest where allowed.

3. This rule generally obtains, though the last period for delivery had not elapsed when the action was brought or the cause tried.

4. Where, however, the date of delivery has been postponed by agreement of the parties or at the request of the bargainor and for his convenience, acquisced in and assented to by the bargainee, in such case, the time of delivery will be at the subsequent date and the damages estimated as of that date.

5. In order to constitute reversible error, it must appear that the appellant's rights have in some way been prejudiced by the action of the court below.

ACTION by Crescent Hosiery Co. against Mobile Cotton Mills, heard by *Judge R. B. Peebles* and a jury, at the August Term, 1905, of the Superior Court of HALIFAX.

There was evidence tending to show that on or about August 1, 1902, defendants contracted to sell and deliver to plaintiff 75,000 pounds of cotton yarns, 25,000 at 14½ cents per pound, and 50,000 at 14¾ cents per pound. That defendant, from time to time thereafter, delivered under the

contract 39,992 pounds, leaving a balance undelivered of 35,087 pounds, for non-delivery of which the present action was instituted. That the contract evidently contemplated that the yarn was to be delivered in weekly shipments, no definite amount being specified for each week, and defendant had commenced shipping at the rate of 1,000 pounds per week, but owing to difficulties in procuring hands and cotton, had been irregular about it, and between the time the contract was entered into and April 16, 1904, had delivered to plaintiff the said amount of 39,992 pounds, which had been received as delivered under the contract; and on that date, defendant wrote to plaintiff and refused to make any further delivery.

The correspondence between the parties during the period covered by the deliveries which were made, shows that at various times, when there were delays and failures in the shipments, defendants would write to plaintiff explaining that these failures, etc., were owing to scarcity of hands, etc., but stating that the drawback would be overcome and expressing the intention to resume shipments and keep right up with plaintiff's orders.

Plaintiff, while requesting shipments of yarn, accepted the various explanations, in one letter expressing sympathy with defendant's difficulties about hands and continuing the contract relations between the parties.

There was evidence to the effect that the market price of these yarns had continuously and steadily increased from the date of the contract till the time when same was broken on April 16, 1904, and on that date the market price at the place of delivery was 22¼ cents and continued at that price during the month of April. There was also evidence to the effect that some time after receiving the letter of April 16, plaintiff had bought, to replace the cotton yarns not delivered, 25,000 pounds of yarn at 22½ cents and later, the remaining 10,078 pounds at 20 cents per pound. This, from

the testimony, seems to have been some months after the termination of the contract. The court charged the jury that if the evidence was believed there was a breach of contract and the damage was the difference between the market and the contract price of the yarn at the date of the termination of the contract by letter, April 16, 1904. Defendant excepted.

There was a verdict in favor of the plaintiff assessing its damage at $2,630.85. The plaintiff having only claimed in its pleading and demanded judgment for $2,000 and the court having declined to permit an amendment to the pleadings enlarging the plaintiff's demand, there was judgment on the verdict for $2,000 and interest, and the defendant excepted and appealed.

*Kitchin, Smith & Kitchin, W. E. Daniel* and *E. L. Travis* for the plaintiff.
*Day, Bell & Dunn* and *Murray Allen* for the defendant.

Hoke, J., after stating the case: The exceptions in this appeal which require consideration are addressed to the charge of the court on the issue as to damages.

The defendant contends that this is a contract for delivery of goods in instalments, and that the court below committed an error in fixing April 16, 1904, when the breach of contract was recognized as entire, as the time when the amount of damage should be estimated; whereas he should have fixed upon the successive periods when there was a failure to deliver the weekly instalments as a correct rule, and that on a market which was constantly advancing, the rule adopted worked to his prejudice to the extent of several hundred dollars. The various exceptions of the defendant are addressed to that single question.

It is undoubtedly the general rule that on a failure by the bargainer to deliver goods having a market value, the meas-

ure of damage is the difference between the contract price and the market value "at the time when and place where it should have been delivered." 2 Sedg. Dam., sec. 734; 2 Sutherland on Damages, sec. 651; *Clements v. State,* 77 N. C., 142; *Coal Co. v. Ice Co.,* 134 N. C., 574; *Saxe v. Lumber Co.,* 159 N. Y., 378. And where, by the terms of the contract, the goods are to be delivered by instalments or at stated periods, the time of delivery will be the date for the delivery of each instalment successively, the damage being the aggregate of these differences estimated as of these respective dates, and interest where allowed. *Sutherland, supra,* sec. 651; Wood's Mayne on Damages, sec. 206; *Brown v. Buller,* Law Rep. 7 Exch., 319; *Furnace Co. v. Cochran,* 8 Fed. Rep., 463. And this rule generally obtains, though the last period for delivery had not elapsed when the action was brought or the cause tried. *Roper v. Johnston,* Law Rep. C. P. No. 8, p. 167. Where, however, the date of delivery has been postponed by agreement of the parties or at the request of the bargainer and for his convenience, acquiesced in and assented to by the bargainee, in such case, the time of delivery will be at the subsequent date and the damages estimated as of that date. Sedg., *supra,* sec. 737; Paige on Cont., sec. 1589; *Summers v. Hibbard,* 153 Ill., 102; *Iron & Metal Co. v. Hirsch,* 94 Ill. App., 579; *Hill v. Smith,* 34 Vt., 525; *Trask v. Hamburger,* 70 N. H., 453; *Ogle v. Earl Vane,* Law Rep. Q. B. No. 3, p. 271; *Hickman v. Haines,* Law Rep. C. P. No. 10, p. 595.

In Paige on Contracts, *supra,* it is said: "And if the time of delivery is postponed by mutual consent, the time fixed by the last postponement is the time at which the damages should be estimated." In *Iron & Metal Co. v. Hirsch, supra,* it is said: "The performance by appellant was postponed from time to time by promises to deliver. These promises extended over a period from the time when delivery was due by the terms of the contract until the time of the settlement by the

appellee of the claim from damages against him and the bringing of the suit." And the damages were assessed at a subsequent period. In *Ogle v. Vane, supra,* it was held that "there was evidence from which the jury might infer that the plaintiff's delay was at the defendant's request; that as the evidence went to show, not a new contract, but simply a forbearance by the plaintiff at the defendant's request, the Statute of Frauds did not apply and the plaintiff was entitled to a verdict for the full amount of damages." As will be noted, this was a case involving a question on the statute of frauds, but it is, we think, also an apt authority on the point here presented, that where delivery is postponed by defendant's request and for his convenience, the date of estimating the damages will be fixed at the subsequent date. *Hickman v. Haines, supra,* is to like effect.

We are of opinion that the correct interpretation of the correspondence and conduct of the parties show that there was a request for forbearance on the part of the defendant accompanied by renewed promises to deliver, acquiesced in and assented to by the plaintiff, which resulted in postponing the time for delivery originally agreed upon. Thus, in the letter of June 8, 1903, the defendant writes: "We are due you on your order, after this shipment of May 30, of 53,866 pounds. We have been very short-handed in our mill, and we are away behind on all our orders on that account, but we are making every effort to get more hands, and as soon as we can do that and get out full production, we will then be able to make you more frequent shipments, and we will be glad to do so as soon as it is possible for us to do it." Signed, Mobile Cotton Mills, M. W. Dunlap, Pres. And on July 10, 1903: "We have had a great deal of machinery standing because we did not have the hands to run it, and as you understand, if we cannot get the yarn made, we cannot ship it. However, we will keep right behind your order and make a

special effort to get you off a shipment with as little delay as possible." Signed as above.

And on July 13, 1903: "We will request the railroad company to trace the shipment we made you on June 30, and hope it will reach you promptly. We also make you another shipment on your order as soon as we possibly can. We are still very short-handed in our mill on account of sickness among our hands, and are away behind on all of our orders on that account, and we do not think it is going to be possible for us to ship you 2,000 pounds weekly, as you have requested, and if our hands are sick and we cannot get the yarn, it is a matter beyond our control. We will keep right behind your order and do the very best we possibly can for you, but the situation does not seem to be improving any with us regarding our hands, and it seems to be impossible to get any more at this season of the year, though we have made every effort to get them, and we doubt if we will be able to get any more for several months yet, as the place from which we can get our new hands is from the country, and they all have little crops now which they will not leave until they have gathered them. We expect to ship you every pound due you on your order, and will make the shipments as soon as we possibly can and with as little delay as possible." Signed as above.

This evidence brings the case clearly within the principle stated, and as to all deliveries due at the time the contract was recognized as broken, there is no error in the charge of the judge below. This, we think, disposes of the appeal, for, according to our estimate, all of the deliveries were past due at the time the contract relation was severed, on April 16, 1904.

The defendant, however, contends that by the terms of the original contract five or six of the weekly instalments were still due on April 16, 1904, and that as to these the general rule should be applied. If this fact be conceded, it could not

avail the defendant. It would indeed show that there was error in the charge as to the portion of yarn remaining undelivered, for, as held in *Roper v. Johnston, supra,* the rule which fixes the date of each instalment, as the determinative period, applies to failures after as well as before an entire breach of contract; and as to yarn remaining undelivered, there has been neither forbearance nor renewed promise. But the verdict and judgment will not be disturbed on this account, because neither the case nor the record affords any means of showing that the defendant's rights were in any way prejudiced.

So far as it appears, there was no decline in the price of yarns from April 16 till the time when the contract would have expired, but the evidence tends to show the contrary. As to yarns remaining undelivered, therefore, and without evidence of any decline in price, it cannot be seen that the error, if committed, has worked any harm to the defendant's cause.

As held in *Cherry v. Canal Co.,* at this term, in order to constitute reversible error, it must appear that the appellant's rights have in some way been prejudiced by the action of the court below. This does not appear in the present case and the judgment below is

Affirmed.